■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVEN WHITE, Appellant.—Mercure, J. Appeal from a judgment of the County Court of Schenectady County (Harrigan, J.), rendered November 21, 1986, convicting defendant upon his plea of guilty of two counts of the crime of promoting prostitution in the third degree.

On May 29, 1985, Parole Officer James Contino observed defendant, one of the parolees under his supervision, standing near a restaurant talking to a young lady. Upon inquiry, defendant identified the girl as Julie Monarch. Contino was advised by the Albany City Police on June 26, 1985, that a missing persons report had been filed with respect to Tracy Prue, also known as Julie Monarch. Contino viewed a picture of Prue and identified her as the girl he had seen with defendant on May 29, 1985. On July 1, 1985, after consultation with his supervisor, Contino issued a parole warrant against defendant, based upon the fact that defendant had failed to appear for his scheduled appointments with him on June 19, and 26, 1985, and the information he had received concerning the missing Prue.

Defendant did appear for his July 3, 1985 appointment, at which time Contino executed the parole warrant. A scuffle ensued, causing defendant to be charged with resisting arrest as well. He was thereupon advised of his constitutional rights *(see, Miranda v Arizona,* 384 US 436). Contino conducted a frisk search and found $885 in cash in defendant's possession, which he seized. Contino contacted State Police Investigator Edmund Girtler, who was conducting an investigation of Prue's disappearance. Girtler arrived shortly thereafter and interviewed defendant without again advising him of his *Miranda* rights. During the course of the interview, defendant asked, "Why should I give up a money-making white pussy?" Additionally, Girtler observed defendant wearing a cameo ring matching the description of a ring belonging to Prue. Contino was advised of this, and the ring was seized.

Prior to defendant's arrest, Charon La Bello, Prue's mother, filed a missing persons report with the Albany City Police. La Bello and Mary Coumbes, Prue's friend, went to the Arbor Hill station where they looked through a loose stack of photographs placed on a table for their review, including one of defendant with his name printed on it. The women sat together, and when they came to the picture of defendant, La Bello asked Coumbes whether that was the man she had seen with her daughter. Coumbes answered affirmatively.

Defendant was eventually indicted for one count of promoting prostitution in the second degree, six counts of promoting prostitution in the third degree and one count of coercion in the first degree. *Huntley* and *Wade* hearings were held in which defendant sought suppression of (1) his incriminating statement, (2) the $885 and the cameo ring, and (3) the identification by La Bello and Coumbes. After a seven-day hearing, County Court denied defendant's motion in its entirety. Defendant thereafter entered a plea of guilty to two counts of promoting prostitution in the third degree in full satisfaction of the eight-count indictment. As part of the plea bargain, defendant was sentenced as a second felony offender to 3 to 6 years' imprisonment on each count, the sentences to run consecutively.

On this appeal, defendant maintains that (1) the incriminating statement was obtained in violation of his right to remain silent and his right to the assistance of counsel, (2) the cameo ring and the $885 in cash were seized from him in violation of his 4th Amendment rights, (3) County Court should have suppressed La Bello's and Coumbes' identification of him, (4) he was prejudiced by the People's withholding of prior statements by suppression hearing witnesses until they had testified at the hearing, and (5) he was prejudiced in preparing his defense by the People's withholding of the true identify of the woman referred to in the indictment. The contentions are without merit.

Initially, we reject defendant's contention that County Court erred in refusing to suppress the incriminating statement made to Girtler. Defendant testified that he did not recall Contino advising him of his *Miranda* rights. Contino testified that he read defendant his *Miranda* warnings and that defendant understood his rights. Contino's testimony is supported by that of Parole Officer Edmund Deutsch and Girtler. Deutsch testified that he observed Contino subdue defendant and read defendant his rights. Girtler testified that he asked defendant to verify that Contino had apprised him of his

rights and that he understood them, and defendant responded in the affirmative. It is apparent that questions of fact existed with respect to whether or when defendant was advised of his *Miranda* rights. This became a matter of credibility, and County Court was free to credit the testimony of the officers *(see, People v Hopkins,* 86 AD2d 937, 938, *affd* 58 NY2d 1079). We concur with County Court's findings.

Accepting the officers' testimony, the inculpatory statement was admissible. The evidence indicates that defendant understood his rights and made a voluntary, knowing and intelligent waiver of them. Nor were the warnings invalidated by Contino's reasonable use of force in effecting the arrest. Defendant was not knocked out, does not appear to have lost his senses and, by his own admission, remained aware of what was going on. The use of force was not intended to coerce a waiver of defendant's rights, but rather to subdue defendant who resisted being placed in custody. The reasonable use of force in the execution of an arrest does not invalidate *Miranda* warnings or make statements made thereafter invalid *(see, People v Hill,* 17 NY2d 185, *cert denied* 383 US 960, *sub nom. Catanzaro v New York,* 385 US 875). Nor did the failure of Girtler to reissue *Miranda* warnings to defendant prior to commencing his interview render defendant's incriminating statement invalid. Defendant's initial warnings and waiver thereof had not grown stale; it made no difference that Girtler was employed by a separate law enforcement agency conducting a separate investigation *(see, People v Johnson,* 49 AD2d 663, *affd* 40 NY2d 882; *see also, People v Crosby,* 91 AD2d 20). It is only where the parole officer is the second party to question that additional *Miranda* warnings have to be given *(see, People v Alston,* 77 AD2d 906).

Defendant also argues that the cameo ring and the $885 in cash were seized in violation of his constitutional rights because his arrest was a sham designed to aid police efforts in obtaining evidence of a crime. We disagree. The parole warrant was supported by reasonable cause to believe that defendant had violated the conditions of his parole and thus was valid *(see, People v Simons,* 22 NY2d 533, *cert denied* 393 US 1107). Defendant had failed to report to his parole officer on two scheduled occasions and had also been observed in the company of Julie Monarch, who Contino subsequently learned to be Tracy Prue, a person recently accused of prostitution. A parole warrant is not invalidated because police have an interest in questioning the parolee or because the facts providing reasonable cause to believe a parole violation exists are

interwoven with the details of a matter under police investigation *(see, People v Frankos,* 110 AD2d 713; *see also, People v Simons, supra,* at 539). Inasmuch as there was a lawful arrest, a search of defendant was authorized *(see, United States v Robinson,* 414 US 218; *see also, People v White,* 109 AD2d 859; *People v Greenwald,* 90 AD2d 668). Additionally, the search of the ring was authorized because it was observed in plain view *(see, People v Basilicato,* 64 NY2d 103, 115).

Defendant's contention that the identification by La Bello and Coumbes should be suppressed is similarly unavailing. Pretrial identification is not admissible into evidence if the procedures followed in securing said identification were unduly suggestive *(see, People v Adams,* 53 NY2d 241). However, the inadmissibility of suggestive pretrial identification will not preclude a witness from identifying a defendant in court where the in-court identification is supported by a sufficient basis for identification *(supra,* at 251) which predates the suggestive pretrial identification procedures *(People v Gaddy,* 115 AD2d 658, 659). Police at the Arbor Hill station could have followed safer procedures for securing La Bello's and Coumbes' identification of defendant. As set up, the risk for suggestiveness in the identification process was enhanced. However, we agree with the determination of County Court that there was an independent source for an in-court identification. Both women had occasion to observe defendant closely prior to identifying his photograph at the Arbor Hill station. La Bello had observed defendant on two prior occasions, each for approximately 15 minutes, when her daughter had appeared in court on prostitution charges. Coumbes also observed defendant prior to the photo identification, having spent about four hours with him on one occasion *(see, People v Ennis,* 107 AD2d 707).

We find that defendant's other allegations of error are meritless or have not been preserved for review. We thus decline to address them.

Judgment affirmed. Mahoney, P. J., Kane, Casey, Weiss and Mercure, JJ., concur.