(June 20, 2013)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TARRANT J. SHEPPARD, Appellant. [967 NYS2d 498]—

Garry, J. Appeals (1) from a judgment of the County Court of Tompkins County (Rowley, J.), rendered May 14, 2008, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the third degree, and (2) by permission, from an order of said court, entered April 20, 2012, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

In November 2006, based upon his alleged role in the October 2003 shooting death of Enrique Chavez, defendant was charged by indictment with manslaughter in the second degree, criminally negligent homicide, criminal possession of a weapon in the third degree and tampering with physical evidence. Following a jury trial, defendant was found guilty only of criminal possession of a weapon in the third degree. After defendant unsuccessfully moved pursuant to CPL 330.30 to set aside the verdict, he was sentenced by County Court as a second felony offender to 3½ to 7 years in prison. Thereafter, he moved pursuant to CPL 440.10 to vacate the judgment of conviction, which motion was denied by County Court without a hearing. Defendant appeals from both the judgment of conviction and, by permission of this Court, from the order denying his CPL 440.10 motion.

First, defendant contends that the verdict is against the weight of the evidence. Where, as here, a different verdict would not have been unreasonable, this Court must view the evidence in a neutral light and, "like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Romero*, 7 NY3d 633, 643 [2006] [internal quotation marks and citations omitted]). As defendant admitted that he had been previously convicted of a crime, the People were required to prove at trial only that defendant possessed a firearm (*see* Penal Law §§ 265.01 [1]; 265.02 [1]; *People v Pinkney*, 90 AD3d 1313, 1314 [2011]). Diego Bush testified at trial that, on the night in question, he was at Chavez's apartment when defendant began to playfully wrestle with Chavez and poked him with a .380 caliber handgun. Bush then heard a gunshot, saw that Chavez had been wounded and called 911. According to Bush, defendant told him after the shooting that he did not know that the gun was loaded and did not mean to shoot Chavez. When questioned about conflicting statements

that he had made to the police immediately after the incident, Bush explained that he had lied about his involvement because he was afraid that the police would not believe him given his criminal history. Ismail Abdur-Razzaaq testified that he had given defendant a .380 caliber handgun, a holster and ammunition the day before the shooting. According to Abdur-Razzaaq, on the night of the shooting, he was at his sister's house when defendant arrived there and claimed that the shooting was an accident and then told them where he had hidden the gun. Umar Abdur-Razzaaq, Ismail's brother, testified that he had also been at his sister's house and gave defendant a ride home that night. Although defendant consistently denied any involvement in the incident, the testimony of Charles Rhody, defendant's roommate, contradicted defendant's claim that he had not left the apartment at all on the night of the shooting.

Though defendant now claims that neither Bush nor Ismail Abdur-Razzaaq is credible since they both have significant criminal histories and both stood to gain a substantial benefit on unrelated charges in exchange for their cooperation, "these issues were fully explored during cross-examination and . . . credibility questions [are] within the jury's province to resolve" (*People v Hoppe*, 96 AD3d 1157, 1159 [2012], *lv denied* 19 NY3d 1026 [2012] [internal quotation marks and citations omitted]). Moreover, in addition to the witness testimony, the evidence established that the police recovered an ammunition magazine and a .380 caliber handgun, which was later identified as the gun from which the fatal shot was fired, from a creek embankment near Chavez's apartment. Police also recovered a holster, ammunition and a user's manual for a .380 caliber handgun, as well as personal items of defendant and correspondence addressed to him, from a bedroom in Chavez's apartment in which defendant admitted that he sometimes stayed. Mindful that the jury is free to selectively credit—or discount—portions of the witness testimony that it hears, and according the appropriate deference to those credibility determinations, we cannot say that the verdict here was against the weight of the evidence (*see id.* at 1159-1160).

Next, defendant contends that County Court erred by summarily deciding his motion pursuant to CPL 440.10 to vacate the judgment of conviction without a hearing. However, a hearing is not required in every instance and here, particularly considering the extensive written submissions by the parties, we do not find that County Court abused its discretion (*see People v Samandarov*, 13 NY3d 433, 436 [2009]; *People v Dozier*, 94 AD3d 1226, 1229 [2012], *lv denied* 19 NY3d 996 [2012]; *People*

*v Snyder*, 91 AD3d 1206, 1214 [2012], *lv denied* 19 NY3d 968 [2012], *cert denied* 568 US —, 133 S Ct 791 [2012]). As to the merits, defendant contends that the People committed a *Brady* violation by misrepresenting the length of the sentences that the United States Attorney's office promised the Abdur-Razzaaq brothers in exchange for their cooperation in the case against defendant as well as a federal drug prosecution. According to defendant, although the cooperation agreements called for a recommendation by the federal prosecutor that the brothers each receive a sentence of 10 years—the statutory minimum for the crimes with which they were charged—they were released after less than three years, which, defendant argues, indicates that the federal prosecutor made a recommendation for less than 10 years. Even assuming this to be true, there is no evidence that the District Attorney prosecuting defendant was involved in that decision or even aware of it at the time of defendant's trial (*compare People v Colon*, 13 NY3d 343, 349 [2009]). Moreover, it is clear that the Abdur-Razzaaq brothers received a substantial benefit in exchange for their cooperation in the case against defendant considering that they each faced a maximum sentence of life in prison, and defendant had ample opportunity to cross-examine them on this issue. Under these circumstances, there is no "reasonable possibility" that the result at trial would have been different and, therefore, reversal is not required (*People v Bond*, 95 NY2d 840, 843 [2000] [internal quotation marks and citation omitted]; *see People v Phillips*, 55 AD3d 1145, 1149 [2008], *lv denied* 11 NY3d 899 [2008]).

The People's failure to inform defendant of criminal charges pending against three prosecution witnesses does not constitute a *Rosario* violation (*see People v Hendrix*, 235 AD2d 575, 576 [1997]; *People v Wolf*, 176 AD2d 1070, 1071-1072 [1991], *lv denied* 79 NY2d 1009 [1992]). We further note that two of these individuals did not testify at trial (*see People v Tucker*, 95 AD3d 1437, 1441 [2012], *lv denied* 19 NY3d 1105 [2012]), and disclosure regarding the disorderly conduct charge against the third, Bush, was not statutorily required, as the People were unaware of that recent charge at the time of trial (*see* CPL 240.45 [1] [c]; *People v Carter*, 50 AD3d 1318, 1320-1321 [2008], *lv denied* 10 NY3d 957 [2008]). Contrary to defendant's contention, it is not reasonable under the circumstances here presented to impute knowledge of that pending charge to the entire District Attorney's office. In any event, even if the failure to disclose was in error, on this record there is no reasonable possibility that the People's failure to disclose Bush's pending charge contributed to the verdict (*see People v Hendrix*, 235

AD2d at 576), particularly considering the fact that defendant effectively cross-examined him about his extensive criminal history.

Nor does the People's alleged failure to turn over more than 500 pages of cell phone records and accompanying handwritten notes constitute a *Rosario* or *Brady* violation. These records did not relate to any witness's testimony at trial (*see People v Smith,* 221 AD2d 251, 252 [1995], *lv denied* 87 NY2d 1025 [1996]), and the information contained therein has not been shown to be favorable to defendant (*see People v Fuentes,* 12 NY3d 259, 263 [2009]). Further, the failure to turn over the records does not require reversal as defendant has not established that there is a reasonable possibility that the disclosure would have resulted in a different outcome at trial (*see People v Auleta,* 82 AD3d 1417, 1420-1421 [2011], *lv denied* 17 NY3d 813 [2011]).

Next, we find that County Court abused its discretion in allowing Chavez's mother to speak at the sentencing hearing. There is no victim of the crime upon which defendant was convicted, as criminal possession of a weapon in the third degree requires only the possession of a firearm by a person previously convicted of a crime (*see* Penal Law §§ 265.01 [1]; 265.02 [1]; *compare People v Hemmings,* 2 NY3d 1, 5 n [2004]). Here, defendant's conviction upon this charge was supported by evidence wholly separate from the circumstances surrounding Chavez's death, as Ismail Abdur-Razzaaq testified that he had provided the handgun to defendant the day prior. It was thus error to allow the mother to give a statement in which she described defendant as a "killer" who "got away with murder." Moreover, we find merit in defendant's contention, though not preserved (*see People v Morgan,* 27 AD3d 579, 579 [2006], *lv denied* 6 NY3d 851 [2006]), that despite promising it would not consider the mother's statement in imposing sentence, County Court may have considered the homicide charges when it sentenced him to the statutory maximum prison sentence of $3^{1}/_{2}$ to 7 years. As defendant contends, from a review of the sentencing transcript, it appears that the court improperly attributed guilt for Chavez's death to him. Consequently, in the interest of justice, we vacate the sentence and remit to County Court for resentencing (*see People v Pacquette,* 73 AD3d 1088, 1088 [2010], *affd on other grounds* 17 NY3d 87 [2011]).

In light of the foregoing, defendant's contention that the sentence imposed is harsh and excessive is academic. Defendant's challenge to statements made by the prosecutor during summation is not preserved for our review. To the extent not specifically addressed herein, defendant's remaining contentions have been considered and found to be without merit.

Peters, P.J., Rose and Lahtinen, JJ., concur. Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by vacating the sentence imposed; matter remitted to the County Court of Tompkins County for resentencing; and, as so modified, affirmed. Ordered that the order is affirmed.